NEWMAN, Circuit Judge,
dissenting from denial of the petition for rehearing en banc.
I write further in view of the extensive amicus curiae participation in this rehearing en banc petition, representing the technology-based foundation of the national economy. The position that the PTO, on post-issuance review, should not apply the claim construction that is applied by the courts, and thus need not achieve the objectively correct determination of validity, has no defender othér than a majority of the Federal Circuit court.
*1304 The loser in this debate is the nation, for the ambitious plan of the America Invents Act is thwarted — a plan to rehabilitate the patent-based innovation incentive by creating a new and powerful adjudicatory tribunal in the PTO, a tribunal that would apply the law reliably and expertly, to achieve expedited and correct determination of patent validity.
A
All of the amici curiae criticize the panel majority position and urge en banc attention to this “matter of exceptional importance.” The brief filed by the 3M Company, Caterpillar Inc., Eli Lilly and Company, General Electric Company, GlaxoSmithKline LLC, Illinois Tool Works Inc., Johnson & Johnson, Pfizer Inc., Procter & Gamble, and Sanofi US, states that together they “spend tens of billions of dollars annually and employ over a half million scientists, engineers and others in the United States alone to develop, produce, and market new products,” and that they “collectively hold tens of thousands of patents [and] participate extensively in patent litigation.” Amicus Curiae Br. of 3M et al. at 1. They advise the court that “the PTO’s decision to use the BRI Rule is inconsistent with the- AIA and sound patent policy.” Id. at 2.
These amici “urge the Court to grant en banc review,” and stress the importance of resolving this concern expeditiously, citing the thousands of current IPR proceedings. They state: “The lack of certainty as to the meaning (and therefore value) of a patent is costly to the inventive community and discourages innovation; it adversely affects patent licensing, design-around activities, and other critical business decisions, contrary to the goals of the AIA.” Id. at 4. They observe that the “application of different standards in the PTO and judicial proceedings also means that each proceeding’s claim construction has no estoppel effect for subsequent proceedings, further encouraging gamesmanship,” and urge this court to correct the PTO’s departure from congressional intent. Id.
The Intellectual Property Owners Association, citing its membership of “over 200 companies and 12,000 individuals involved in the association through their companies or as inventor, author, executive, law firm or attorney,” Br. of IPO as Amicus Curiae at 1, states that: “The use of BRI in IPR proceedings is rapidly undermining the public’s confidence in the patent system. The [Cuozzo ] panel’s decision upsets the settled expectation of inventors, patentees, and all others who depend on the patent system.” Id. The IPO urges the en banc court to review the panel’s ruling, for “[fin-vestment decisions relating to research and development of new inventions and the commercialization of previously patented ones are now being chilled.” Id. at 4.
The Pharmaceutical Research and Manufacturers of America reminds the court that pursuit of medical advances requires enormous investments — roughly $40-50 billion annually — “made possible by clearly defined and predictable patent law protections.” Br. of Amicus Curiae PhRMA at 1. The amicus describes the broadest reasonable interpretation standard in the new post-grant proceedings as an issue of “particular importance.” Id. Amicus New York Intellectual Property Law Association reiterates that the “issue is of great importance and should be re-heard en banc.” Amicus Curiae Br. of NYIPLA at 4.
The amici explain the commercial, economic, and pragmatic implications of the majority position. They stress the need for clarity and predictability in the law on which commercial decisions are made, they emphasize the legislative purpose of the America Invents Act, and ask this en banc court to guide agency understanding of the *1305 statute. The majority of the court appears unperturbed.
In contrast, the legislative record of the America Invents Act is full of testimony in elaboration of the concerns of the nation’s industries, that the system of patents is of diminished service to industrial growth and competitiveness, despite this era of scientific promise and creativity. The America Invents Act is the culmination of several years of effort, focused on achieving stability and predictability of patent validity determinations.
The amici curiae stress the need for investment-reliable patent rights, and the AIA’s purpose of establishing this new administrative adjudicative authority. This purpose collapses if the PTO applies a unique rule of patent claim construction, different from the law of claim construction that is applied in the courts. The public interest in technological advance, and the national interest in a vigorous economy served by growth, employment, creativity, and trade, require that this court accept the petition for en banc rehearing.
B
The America Invents Act established a new PTO tribunal in order to achieve rapid, efficient, and correct resolution of issues of patent validity that heretofore required trial in the district courts after controversy arose. All of the amici curiae stress the importance, the value, of this new adjudicative plan. Yet the legislative purpose fails if the PTO applies different law than is applied in the courts. As the amici point out, and as current experience illustrates, instead of diminishing the gamesmanship, delay, and burdens of patent disputes, they are enhanced.
This was not. the legislative intent.[1] As elaborated in my panel dissent and in today’s en banc dissent, I tabulate some reasons why the “broadest reasonable interpretation” is the improper standard for America Invents Act post-issuance procedures:
• Claims of issued patents are construed the same way for validity as for infringement; no precedent, no practical reality, authorizes or tolerates a broader construction for one than the other.
• The broadest reasonable interpretation is an appropriate examination expedient, for it aids definition of claim scope during prosecution, with ready amendment of pending claims. In contrast, in the ALA proceedings amendment requires permission, and is limited even when permitted.
• With PTO construction of issued claims more broadly than the basis on which they were granted, the patentee must now defend, in these ALA proceedings, the validity of claim scope he did not obtain from the PTO during prosecution.
• The ALA contemplated a streamlined surrogate tribunal for determination of validity. This requires that the same claim construction is applied in the PTO as in the district courts. '
• The public notice role of patent claims requires the correct claim construction, not an arbitrarily broad construction of undefined limits.
• Neither the PTO nor any judicial precedent provides guidance as to how *1306 broad is “broadest,” or sets any limits to this parameter. Predictability of legal rights, and stability of law, are replaced by fuzziness and uncertainty.
• The AIA designed the new PTO tribunal to “review the validity of a patent.” It was expected that the PTO would apply the correct law of validity, while drawing on PTO expertise in technology and PTO experience in patent law. It cannot have been intended that the PTO would not apply the correct law in these new post-grant proceedings.
The concurrence, in reinforcing denial of en banc review, states that claims of issued patents have been given their “broadest” interpretation for a hundred years, citing patent interferences and reissues. See Concurring Op. at 1298-99. Any practitioner of patent interferences knows that the PTO, in determining conception, reduction to practice, corroboration, diligence, experimental support, etc., did not apply a “broadest” interpretation ' of anything. And reissues are directed to correction of the patentee’s error; the purpose is to achieve correctness, not breadth. Contrary to the concurrence, the question before this court is not whether to “eliminate” BRI, but whether to impose it on issued patents, where it has not previously reposed.
This is a simple question, although of powerful consequence. As urged by the amici curiae, it should be answered correctly.

. Corrective legislation, requiring that “each claim of a patent shall be construed as such claim would be in a civil action” has been enacted in bills approved by both the House and Senate committees, but has stalled because of unrelated areas of controversy. See 2015 Patent Reform Innovation Act, H.R. 9, 114th Cong. § 9(b)(1)(C) (2015); Patent Act, S. 1137, 114th Cong. § 11(a)(4)(A)(vii) (2015). Prompt resolution is reported to be unlikely.